## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

IGNACIO VALADOVINOS (M33063),

        Petitioner,

           v.

TYRONE BAKER, *Warden*, *Hill Correctional Center*,

        Respondent.

No. 22-cv-01199

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

Petitioner Ignacio Valadovinos, a prisoner at the Hill Correctional Center, brings this *pro se* habeas corpus petition under 28 U.S.C. § 2254 challenging his 2012 Cook County convictions for attempted murder, aggravated discharge of a firearm, and aggravated battery of a peace officer. (Dkt. 1.) For the reasons that follow, Petitioner's claims are either noncognizable, procedurally defaulted, or meritless. Petitioner's habeas corpus petition is therefore denied, and the Court declines to issue a certificate of appealability.[1]

---

[1] The Clerk is instructed to (1) terminate Respondent Mark Williams and replace him with Petitioner's current custodian, Tyrone Baker, Warden, Hill Correctional Center; and (2) update the case caption to *Valadovinos v. Baker*.

## I.    BACKGROUND

### A.    Petitioner's Trial

Following a jury trial,[2] Petitioner was convicted of attempted murder while personally discharging a firearm; aggravated discharge of a firearm; and aggravated battery of a peace officer. *People v. Valadovinos*, 2014 IL App (1st) 130076, ¶ 14. The attempted murder and firearm offenses were based on Petitioner's firing of five gunshots at Ernesto Fernandez (the victim) outside a bar on the southside of Chicago, Illinois. *Id.* at ¶ 1. That shooting led to a car chase and foot pursuit by officers of the Chicago Police Department. *Id.* After he was caught, Petitioner headbutted one of the officers in the face; that offense was the basis of Petitioner's aggravated battery conviction. *Id.* at ¶ 8. Petitioner was sentenced to a total of 43 years' imprisonment based on those convictions. *Id.* at ¶ 17.

At trial, Ernesto Fernandez testified that he, his brother Carlos Fernandez, and their cousin Ebelia Ocampo were at a bar located near the intersection of 25th Place and California Avenue around 2:00 a.m. on February 28, 2010. *People v. Valadovinos*, 2021 IL App (1st) 182161-U, ¶ 7. A fight broke out inside the bar, and Ernesto Fernandez, Carlos Fernandez, and several others became involved; the combatants eventually spilled outside and continued their fisticuffs in the middle of

---

[2] The background facts are drawn from the state court record (Dkt. 11) as well as the state appellate court decisions on direct appeal, *People v. Valadovinos*, 2014 IL App (1st) 130076, and postconviction appeal. *People v. Valadovinos*, 2021 IL App (1st) 182161-U. Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), federal habeas review affords great deference to state court decisions (including their discussions of the facts). *See Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citing 28 U.S.C. § 2254(e)(1); *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018)).

California Avenue. *Id.*. *Id.* As the fight went on, Ernesto Fernandez remained in the middle of the street with four other people, and the remainder of the group moved to the adjoining sidewalk. (Dkt. 11-11 at 53.) Ernesto Fernandez explained that he observed a Dodge Stratus automobile driving "fast" down the street, and he "pulled back" to avoid being hit. *Id.* at 23–24. The car stopped just past the people in the middle of the street, about 40 to 45 feet away by Ernesto's estimate. *Id.* at 24–26.

A man, whom Ernesto did not recognize at the time of the incident but later identified as Petitioner in a show-up identification at the scene, emerged from the passenger side of the vehicle, pulled out a gun, and began shooting at Ernesto. *Valadovinos*, 2021 IL App (1st) 182161-U, ¶¶ 7–9. Ernesto "tri[ed] to dodge the bullets" by "flipping" or "dancing," explaining that if he would have turned his back to run, he "would have probably gotten hit." (Dkt. 11-11 at 29.) Ernesto described how Petitioner closed in on him as he continued shooting, so Ernesto dropped to the ground. *Id.* at 30. Ernesto then saw the last bullet hit the ground near him. *Id.* Ernesto heard about four or five gunshots in total, *id.* at 29–30, but none of the bullets struck Ernesto. *Valadovinos*, 2021 IL App (1st) 182161-U, ¶ 9.

Carlos Fernandez similarly testified that he was at a bar with Ernesto Fernandez and Ocampo when a fight began that migrated outside. *Id.* at ¶ 10. Carlos Fernandez was fighting another individual in a grassy parkway across from the bar when he heard someone yell out. *Id.* Carlos stopped fighting and saw a Dodge Stratus driving northbound on California toward Ernesto Fernandez. *Id.* After passing the crowd, the Dodge stopped in front of a gyros restaurant on the northwest side of the

3

intersection, opposite to the bar. (Dkt. 11-11 at 70.) A man stepped out of the front passenger side holding a gun. *Valadovinos*, 2021 IL App (1st) 182161-U, ¶ 11. Carlos Fernandez watched as the man walked around the car, pointed the gun at Ernesto Fernandez, and began firing from a few feet away. *Id.* Carlos heard five or six gunshots, and observed Ernesto "zigzagging trying to avoid the shots." *Id.* Carlos testified that Ernesto was standing by himself during the shooting, and he did not see the gunman aim at anyone else. *Id.* at ¶¶ 11, 13. Carlos also identified Petitioner as the shooter in a show-up identification at the scene. *Id.* at ¶ 12.

Carlos Fernandez explained that Petitioner ran back to the Dodge after the shooting stopped. *Id.* Before Petitioner went in the car, he pointed a firearm at Carlos. *Id.* Carlos heard the firearm make a "click" sound. *Id.* Petitioner then returned to the passenger seat, and the car drove off. *Id.* On cross-examination, Carlos said that a bullet grazed Ernesto Fernandez's arm, but Ernesto did not go to the hospital. *Id.*

Ocampo testified that she, too, saw a car traveling northbound on California that stopped in front of the gyro restaurant. *Id.* at ¶ 14. Ocampo observed a man leave from the car's passenger side, but she did not get a good look at him because she hid behind a truck. *Id.* Ocampo heard gunshots as she hid, but she did not see who was shooting or where the shooting occurred. *Id.* When the gunshots stopped, she heard Ernesto Fernandez scream that he had been shot; she also heard the car speed off. *Id.* Ocampo testified that three other men were standing near Ernesto when the shooting began. *Id.* at ¶ 15. Ocampo was unable to identify the shooter to police. *Id.* at ¶ 14.

Chicago Police Department officers Paul Kane, Rocco Pruger, and Todd Mueller also testified. *Id.* at ¶¶ 16-18. Lieutenant Kane explained that he was on duty driving in a marked police car when he saw a crowd standing around a Dodge Stratus near 25th and California. *Id.* at ¶ 16. Lieutenant Kane heard four or five gunshots from the direction of the crowd and saw the Dodge quickly drive away. *Id.* Lieutenant Kane pursued the vehicle and observed a man, whom he later identified as Petitioner, jump out of the front passenger side and run away. *Id.*; *see also* Dkt. 11-12 at 11.

Officers Mueller and Pruger responded to a radio dispatch regarding the shooting and the fleeing vehicle. *Valadovinos*, 2021 IL App (1st) 182161-U, ¶¶ 17-18. They observed Petitioner running away and engaged in a foot chase. *Id.* Officer Mueller testified that he saw Petitioner throw a gun during the chase. *Id.* at ¶ 18. Officer Pruger testified that he was able to tackle Petitioner, but Petitioner headbutted him in the face. *Id.* at ¶ 17. Officer Mueller witnessed the headbutt and assisted with the arrest. *Id.* at ¶ 18.

An evidence technician testified that he recovered a semiautomatic pistol from the area where Petitioner tossed his gun as well as five fired cartridge cases from the scene of the shooting. *Id.* at ¶ 19. A forensic scientist testified that all five cartridge cases came from the recovered pistol. *Id.* at ¶ 20.

During closing arguments, Petitioner asserted that there was no evidence he intentionally tried to kill Ernesto Fernandez because the evidence proved only that a man exited the car and shot a gun in the direction of a crowd of people. (Dkt. 11-13,

p. 24, 29.) Rejecting that argument, the jury found Petitioner guilty on all three charged counts. *Valadovinos*, 2021 IL App (1st) 182161-U, at ¶ 22. Following the verdict, the trial court merged the aggravated discharge of a firearm count into the attempted murder count and sentenced Petitioner to 43 years of imprisonment, to run concurrently with a five-year sentence for the aggravated battery of a peace officer conviction. *Id.* at ¶ 24.

### B.    Petitioner's Direct Appeal

Petitioner appealed, arguing that the trial court's jury instruction on attempted murder was improper and that trial counsel was constitutionally ineffective for failing to object to the allegedly flawed jury instruction. (Dkt. 11-6 at 15–25.) Petitioner also raised two sentencing challenges: one regarding the trial court's consideration of mitigating and aggravating factors in sentencing, and the other regarding the calculation of his presentencing custody credit. (*Id.* at 26–32.)

A panel of the state appellate court affirmed, but that court corrected Petitioner's sentence to reflect time credits to which Petitioner was entitled. *Valadovinos*, 2014 IL App (1st) 130076, ¶ 60. With the assistance of counsel, Petitioner then filed a petition for leave to appeal (PLA) to the Supreme Court of Illinois. (Dkt. 11-6 at 62–81.) That PLA challenged, in relevant part, the trial court's jury instruction on the attempted murder charge as well as the ineffectiveness of trial counsel in failing to object to it. (*Id.* at 70–80.) The Illinois Supreme Court denied his PLA. *People v. Valadovinos*, 23 N.E.3d 1206 (Ill. 2015) (Table). Petitioner did not petition the United States Supreme Court for a writ of certiorari. (Dkt. 1 at 2.)

### C.      Petitioner's Postconviction Proceedings

In his Illinois postconviction proceedings, Petitioner filed a counseled petition in which he argued (1) actual innocence; (2) ineffective assistance of trial counsel based on his attorney's failure to (a) interview and call as a witness Rudolfo Zarco, the driver of the Dodge and (b) impeach Ernesto Fernandez with his earlier signed statement; and (3) ineffective assistance of appellate counsel for failing to challenge on direct appeal trial counsel's alleged ineffectiveness in not asking the trial court to poll the jury. (Dkt. 11-5 at 77–93.) The trial court granted the State's motion to dismiss the petition, *id.* at 203, and Petitioner appealed.

On appeal of the denial of his postconviction petition, Petitioner, through counsel, raised claims regarding actual innocence and ineffective assistance of trial counsel as to the failure to call Zarco and the failure to impeach Ernesto Fernandez. (Dkt. 11-7 at 13–31.) Petitioner did not raise on appeal, however, a claim concerning ineffective assistance of appellate counsel as to the jury-polling issue. *See id.* The state appellate court affirmed the trial court's dismissal. *Valadovinos*, 2021 IL App (1st) 182161-U, ¶ 56. The Supreme Court of Illinois denied Petitioner's *pro se* postconviction PLA, *People v. Valadovinos*, 183 N.E.3d 877 (Ill. 2021) (Table), which raised the same claims as those asserted on postconviction appeal. (Dkt. 11-7 at 111–18.)

### D.      Federal Habeas Petition

Petitioner seeks a federal writ of habeas corpus from this Court. (Dkt. 1.) Petitioner contends that (1) the state trial court improperly instructed the jury on the

attempted murder charge; (2) actual innocence; (3) ineffective assistance of counsel for his trial attorney's failure to (a) interview and call Zarco as a witness and (b) impeach Ernesto Fernandez with his earlier statement; and (4) ineffective assistance of appellate counsel for failing to raise on direct appeal an ineffective assistance of counsel claim based on his trial attorney's failure to poll the jury. (*Id.* at 4–7.) These contentions are addressed in turn.

## II. DISCUSSION

### A. Claims 1 and 2 are Noncognizable on Federal Habeas Review

Federal habeas corpus relief is available only to persons who can establish that their incarceration violates the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); 28 U.S.C. § 2254(a). As explained below, Petitioner's first two claims do not raise federal constitutional issues and, therefore, do not present claims cognizable by this Court.

### 1. Claim 1 (Trial Court's Jury Instruction)

Claim 1 challenges the trial court's jury instruction on the attempted murder charge. Petitioner argues that his "right to have the jury properly instructed on" attempted murder was violated because the trial court instructed the jury that it needed to find that he intended to kill "an individual," as opposed to a specific finding that he intended to kill Ernesto Fernandez. (Dkt. 1 at 4.)[3]

---

[3] Respondent argues that this Court is foreclosed from reviewing the merits of Claim 1 because the state appellate court denied the claim on an independent and adequate state ground, thereby rendering the claim procedurally defaulted. (Dkt. 10 at 8–9); *see Garcia v. Cromwell*, 28 F.4th 764, 771 (7th Cir. 2022) (quoting *Triplett v. McDermott*, 996 F.3d 825, 829 (7th Cir. 2021)) ("Merits review of a habeas claim is foreclosed if the relevant state court's disposition of the claim rests on a state law ground that is adequate and independent of the

Petitioner's claim begins and ends with state law. Illinois law provides that juries must be instructed consistent with the Illinois Pattern Jury Instructions (IPI) if an applicable instruction exists. *See People v. Haywood*, 413 N.E.2d 410, 413 (Ill. 1980); Ill. Sup. Ct. R. 451(a). Deviation from the pattern instructions is allowed "only where necessary to conform to unusual facts or new law." *People v. Banks*, 678 N.E.2d 348, 353 (Ill. App. Ct. 1997). For an attempted murder charge, the applicable pattern instruction provides that the State must prove beyond a reasonable doubt (1) "[t]hat the defendant performed an act which constituted a substantial step toward the killing of an individual" and (2) "[t]hat the defendant did so with the intent to kill an individual." IPI, Criminal, No. 6.07X (4th ed. 2000).

In Petitioner's case, the intermediate state appellate court concluded that there was no basis for which to deviate from the pattern jury instructions and specify that Ernesto Fernandez was the intended victim. *Valadovinos*, 2014 IL App (1st) 130076, ¶¶ 29–35. As the state appellate court noted, modifying an attempted murder jury instruction to include the victim's name was required in a case involving two separate victims (a victim of murder and a victim of attempted murder) to avoid potential juror confusion as to the victims' identities. *Id.* at ¶ 30 (citing *People v. Anderson*, 2012 IL App (1st) 103288). But the state appellate court held that the circumstances of Petitioner's case did not create the possibility of such confusion. In particular, "the overwhelming evidence show[ed] . . . [that Petitioner] singled out

---

merits of the federal claim."). This Court need not address the procedural default argument because, whether or not defaulted, Claim 1, which does not implicate a federal constitutional issue, is not cognizable on federal habeas review.

Ernesto as the sole target of all five shots," and "the jury was well informed that the sole intended target was Ernesto" from *voir dire* through closing argument. *Id.* at ¶¶ 34–35. As a result, the state appellate court held there was no error in the instruction as given at trial. *Id.* at ¶ 43.

This Court is precluded from disagreeing with the state appellate court's determination that Petitioner's case warranted no variation from the pattern instruction. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *see also Powell v. Fuchs*, 4 F.4th 541, 548 (7th Cir. 2021) (noting that "on habeas review we cannot overturn a state-court's conclusions about state law"); *Valladares v. Melvin*, No. 17 C 1000, 2018 WL 4075723, at *12 (N.D. Ill. Aug. 27, 2018) (state court's conclusion "based on . . . assessment of the adequacy of the applicable Illinois Pattern Jury Instructions . . . may not be disturbed on federal habeas review").

Accordingly, because Claim 1 implicates only a state-law issue question about modifying an Illinois pattern jury instruction, not a federal constitutional issue, it falls outside the province of federal habeas corpus review. *Estelle*, 502 U.S. at 67–68 ("it is not the province of a federal habeas court to reexamine state-court determination on state-law questions"). Claim 1 of Petitioner's petition is thus denied as noncognizable.

## 2.    Claim 2 (Actual Innocence)

Claim 2 of Petitioner's petition raises a freestanding claim of actual innocence. In support of this claim, Petitioner points to affidavits from Melinda Duran and Rudolfo Zarco. (Dkt. 1 at 5–6.) Petitioner contends that the allegations contained in these affidavits demonstrate that he did not act with the requisite intent to be convicted of attempted murder. (Dkt. 14 at 16.)

Illinois law recognizes freestanding claims of actual innocence based on newly discovered evidence. *See Meyers v. Gomez*, 50 F.4th 628, 646 (7th Cir. 2022); *People v. Ortiz*, 919 N.E.2d 941, 948-49 (Ill. 2009); *People v. Washington*, 665 N.E.2d 1330, 1336-37 (Ill. 1996). To prevail on an actual innocence claim under Illinois law, the evidence must not only be "newly discovered," but also material, noncumulative, and "of such a conclusive character that it would probably change the result on retrial." *People v. Morgan*, 817 N.E.2d 524, 527 (Ill. 2004).

Citing precedents from the Sixth and Eleventh Circuits, Petitioner argues that Zarco and Duran's affidavits constitute "newly discovered evidence" that warrants relief. (Dkt. 14 at 15) (citing *United States v. Garcia*, 19 F.3d 1123, 1126 (6th Cir. 1994) ("newly discovered evidence" is evidence that was discovered after trial and could not have been previously discovered with due diligence; is material and non-cumulative; and would likely produce a different result on retrial); *United States v. Reed*, 887 F.2d 1398, 1404 (11th Cir. 1989) (same)). But the standard Petitioner cites applies not to freestanding claims of actual innocence in federal habeas corpus proceedings, but rather to motions in federal criminal proceedings seeking a new trial

based on newly discovered evidence. *See Garcia*, 19 F.3d at 1126; *Reed*, 887 F.2d at 1404. A freestanding actual-innocence claim in a federal habeas corpus action is a chimera: the Supreme Court has yet to recognize freestanding claims of actual innocence under the federal constitution. *See McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013); *see also Cal v. Garnett*, 991 F.3d 843, 850–51 (7th Cir. 2021) (collecting cases) (neither the Supreme Court nor the Seventh Circuit has recognized freestanding actual-innocence claims on federal habeas corpus review).

Instead, claims of actual innocence are treated as a gateway for prisoners to overcome procedurally defaulted and time-barred claims. *McQuiggin*, 569 U.S. at 386; *Schlup v. Delo*, 513 U.S. 298, 327–29 (1995); *Cal*, 991 F.3d at 850. If the petitioner satisfies the actual innocence exception, he "must then identify a constitutional error that infected the trial to warrant habeas relief." *Cal*, 991 F.3d at 850. But standing alone, "separate and apart from any constitutional error[,]" the Supreme Court has never held that a claim of actual innocence can support federal habeas corpus relief. *Id.*

This absence of clearly established Supreme Court precedent dooms Claim 2, as this Court may not answer whether actual innocence claims are cognizable on federal habeas corpus review. On the contrary, where, as here, there is no clearly established law from the Supreme Court as to the question presented, "relief [under 28 U.S.C. § 2254] is unauthorized." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam). Accordingly, Claim 2 of Petitioner's petition does not raise a cognizable claim for federal habeas corpus relief and must be denied.

### B.      Claim 4 is Procedurally Defaulted

Turning next to Claim 4 (Claim 3 is addressed below), Petitioner asserts that he received ineffective assistance of appellate counsel when his lawyer failed to argue on appeal that his trial attorney rendered constitutionally ineffective assistance by not asking the trial judge to poll the jurors after they returned their verdict. (Dkt. 1 at 7.) Respondent contends that, because this claim was not raised through one complete round of state-court review, it is procedurally defaulted. (Dkt. 10 at 9–10.)

State prisoners "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" either on direct appeal or in postconviction proceedings. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). In Illinois, this requirement includes presenting the claims in a PLA to the Supreme Court of Illinois. *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018) (citing *Boerckel*, 526 U.S. at 845–46). If the "'federal issue was not fairly presented to the state courts and those courts would now hold the claim procedurally barred,' the procedural default doctrine precludes" federal habeas corpus review. *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016) (quoting *Ward v. Jenkins*, 613 F.3d 692, 696 (7th Cir. 2010)).

Petitioner concedes that he failed to preserve Claim 4 claim for habeas corpus review, explaining that the claim was "inadvertently raised" in his habeas petition. (Dkt. 14 at 13.) This concession is well-taken, as Petitioner presented his ineffective assistance of appellate counsel claim only in his postconviction petition (Dkt. 11-5 at

13

92–93), not in his appeal from the trial court's denial of that petition. (Dkt. 11-7 at 13–31); *see also McGhee v. Watson*, 900 F.3d 849, 854 (7th Cir. 2018) (ineffectiveness claim based on appellate counsel's failure to challenge trial attorney's performance as to polling error was defaulted where it was not presented on direct review or postconviction appeal). Accordingly, Claim 4 of Petitioner's petition is procedurally defaulted.

There are two exceptions to procedural default: (1) cause for the default coupled with actual prejudice; and (2) a showing that "failure to consider the claims will result in a fundamental miscarriage of justice," which typically requires establishing actual innocence. *Thomas*, 822 F.3d at 386 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)) (cleaned up).

Petitioner concedes that Claim 4 is procedurally defaulted and does not argue that his case warrants one or both exceptions. (Dkt. 14 at 14.) But several of Petitioner's habeas claims could be construed as arguments in favor of applying at least one of these exceptions. Accordingly, for purposes of completeness, this Court considers those claims as arguments that the exceptions should apply.

Petitioner's best ground for cause and prejudice would be an ineffective assistance claim. But to constitute "cause" that excuses the default, the ineffectiveness claim itself must have been presented to each level of state-court review, which Petitioner did not do. *See Edwards v. Carpenter,* 529 U.S. 446, 451-52 (2000); *see also Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). Nor can any errors attributable to postconviction counsel establish cause to excuse the default, as there

14

is no "constitutional right to counsel in state postconviction proceedings." *Davila v. Davis*, 582 U.S. 521, 524 (2017). Petitioner has thus not shown "cause for the default and actual prejudice," meaning that he fails to qualify for the first exception to procedural default.

Petitioner's actual-innocence claim (Claim 2) also fails to satisfy the fundamental miscarriage of justice exception (the second exception to procedural default). As the Supreme Court has noted, "tenable actual-innocence gateway pleas are rare." *McQuiggin*, 569 U.S. at 386. A petitioner must persuade the district court that, in the light "of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 329. This standard is demanding; review is permitted "only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327). To demonstrate innocence "so convincingly that no reasonable jury could convict," a prisoner must possess "documentary, biological (DNA) or other powerful evidence: perhaps some non-relative who placed him out of the city, with credit card slips, photographs, and phone logs to back up the claim." *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005).

Petitioner contends that Zarco and Duran's affidavits establish his actual innocence by showing that he did not specifically shoot at Ernesto Fernandez, but rather discharged a firearm to scare the crowd out of the street. *See* Dkt. 1 at 5–6; Dkt. 14 at 6.) Zarco and Duran's assertions, however, are far from the type of certain and "powerful" evidence required to establish actual innocence. In fact, their affidavits are largely corroborative of the State's evidence—confirming that

Petitioner was the passenger in the Dodge who emerged from the vehicle and began firing a gun at a crowd of people.[4] (Dkt. 11-5 at 111, 197.)

Although some discrepancies exist between Ernesto Fernandez and Carlos Fernandez's testimony and Zarco and Duran's affidavits—such as the speed of the Dodge, the distance at which Petitioner began firing the gun, and the location of Ernesto Fernandez relative to the crowd[5]—these are minor, effectively nonexculpatory points. And although Petitioner argues that Zarco and Duran's affidavits constitute "valuable impeachment evidence" (Dkt. 14 at 16), new evidence that merely challenges a witness's credibility does not satisfy the actual innocence standard. *See McDowell v. Lemke*, 737 F.3d 476, 484 (7th Cir. 2013) ("Rather than establishing [petitioner's] innocence," the new evidence only "tend[ed] to impeach [State witness's] credibility.").

Finally, Petitioner's theory that he discharged a firearm to scare the crowd out of the street is inconsistent with the evidence showing that the car continued driving by the crowd before the shooting occurred. Neither affiant contended that Petitioner fired his gun into the air or otherwise aimed in such a way as to suggest that he was not intending to shoot someone. On the contrary, Duran stated in her affidavit that the shooter "sho[t] at the people in the street." (Dkt. 11-5 at 111.)

---

[4] Duran, a fellow bar patron, stated in her affidavit that she saw a person exit from the Dodge and start shooting. (Dkt. 11-5 at 111.) Zarco, the driver of the Dodge, confirmed that the person who emerged from his vehicle was Petitioner. (*Id.* at 197.) Zarco heard gunshots after Petitioner exited the car but did not see who was shooting. (*Id.*)

[5] Both affiants contended that the Dodge drove slowly (as opposed to quickly) past the crowd and stopped about 50 yards (as opposed to 40 to 45 feet) away. (Dkt. 11-5 at 111) (Duran's affidavit); (*Id.* at 197) (Zarco's affidavit). Duran also represented that there was not one "person standing alone when the shooting started." (*Id.* at 111.)

Neither Zarco's nor Duran's affidavits meet *Schlup*'s standard for establishing actual innocence. Petitioner may not, therefore, invoke the fundamental miscarriage of justice exception to excuse his procedural default. Claim 4 is therefore denied.

## C.     Claim 3 (Ineffective Assistance) is Meritless

In view of the foregoing analysis, Claim 3 of the petition remains as the only claim on which the Court can address the merits. Claim 3 asserts two grounds to show that Petitioner's trial counsel rendered ineffective assistance. First, Petitioner contends that his trial counsel was ineffective for failing to interview and call Zarco as a witness. (Dkt. 1 at 6.) Second, Petitioner argues that his trial counsel was ineffective for failing to impeach Ernesto Fernandez with an earlier statement that he had provided to the State's Attorney. (*Id.*)

The last state court to address the merits of this claim was the state appellate court on postconviction appeal, making it the relevant opinion for this Court's consideration. *See Thurston v. Vanihel*, 39 F.4th 921, 928 (7th Cir. 2022). That court rejected both claims on the merits, holding that neither alleged deficiency prejudiced Petitioner. *Valadovinos*, 2021 IL App (1st) 182161-U, ¶¶ 50, 52-53, 55.

Relief under 28 U.S.C. § 2254 is available only when the state court's decision on the merits of a given claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or was based on an unreasonable determination of the facts." *Cook v. Foster*, 948 F.3d 896, 901 (7th Cir. 2020) (citing 28 U.S.C. § 2254(d)). By design, this standard for federal courts evaluating state court rulings is "difficult to meet" and "highly

deferential," requiring that the state court decisions be "given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks omitted) (citing *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

Ineffective assistance of trial counsel claims must be evaluated under the two-prong standard established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires the prisoner to show both that "(1) counsel's performance was deficient, and (2) the deficient performance was prejudicial such that it deprived the defendant of a fair trial." *Thurston*, 39 F.4th at 928-29 (citing *Strickland*, 466 U.S. at 687). Prejudice means "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability," in turn, is "a probability sufficient to undermine confidence in the outcome." *Id.*

Failing to establish either element of an ineffective assistance challenge defeats the claim. *See Thill v. Richardson*, 996 F.3d 469, 476 (7th Cir. 2021). As the Supreme Court explained in *Strickland*, "there is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. In fact, the Supreme Court stated that if "it is easier to dispose of an ineffectiveness claim on the ground of lack of prejudice, which we expect will often be so, that course should be followed." *Id.*

Petitioner cannot show the state appellate court's decision was "contrary to" *Strickland*. The state court identified *Strickland* as the applicable standard and correctly defined its performance and prejudice prongs. *See Valadovinos*, 2021 IL App (1st) 182161-U, ¶¶ 48-49. That the state court defined *Strickland*'s prongs by citation to state cases, rather than federal ones, is of no consequence under 28 U.S.C. § 2254(d). *See Early v. Packer*, 537 U.S. 4, 8 (2002) (neither citation to, nor awareness of, Supreme Court cases is required for a state court decision to avoid being found "contrary to" Supreme Court precedent).

The state appellate court's application of *Strickland* was also not unreasonable. As for trial counsel's decision not to interview or call Zarco, the state appellate court reasonably concluded that his testimony "was as favorable to the State as it was to [Petitioner]." *Valadovinos*, 2021 IL App (1st) 182161-U, ¶ 53. Indeed, Zarco's testimony, if consistent with his affidavit, would have been circumstantially *inculpatory*, as Zarco placed Petitioner at the crime scene and exiting from the vehicle shortly before the gunshots began. Petitioner's only hope in calling Zarco to testify would have been to impeach the State's witnesses as to the speed at which Petitioner drove through the crowd and how far away he stopped. But, as explained above, such evidence was largely immaterial and did not contradict the key aspects of the State's case.

So too for Ernesto Fernandez's earlier statement. (Dkt. 11-5 at 96–99.) It is true that some inconsistencies existed between Ernesto's statement to the State's Attorney and his trial testimony, such as who the Dodge almost hit and how he

dodged the bullets.[6] But the most critical aspect of Ernesto Fernandez's testimony—that Petitioner exited the Dodge with a gun, pointed it at him, and fired multiple times before fleeing in the same vehicle—was in no way undermined by his prior statement.

More importantly, there was ample evidence of Petitioner's guilt beyond Ernesto Fernandez's testimony. *See Strickland*, 466 U.S. at 696 ("a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support"). Carlos Fernandez also identified Petitioner as the individual who emerged from the Dodge and who aimed and fired a gun at Ernesto Fernandez. Lieutenant Kane heard the gunshots, saw the Dodge flee the scene, and observed Petitioner jump out of the vehicle during the car chase. Officer Mueller observed Petitioner both throw a firearm and headbutt Officer Pruger during the subsequent foot-chase. And the ballistic evidence confirmed the cartridge casings came from the firearm Petitioner threw.

It was therefore reasonable for the state appellate court to reject Petitioner's ineffective assistance claims on *Strickland's* prejudice prong, as there was no reasonable probability of a different trial outcome even had counsel called Zarco as a witness or impeached Ernesto Fernandez. *See Lumpkins v. Hermans*, 33 F.4th 403, 410–11 (7th Cir. 2022) (petitioner not prejudiced by counsel's failure to impeach key witness with prior inconsistent statements where there existed overwhelming

---

[6] In his statement, Ernesto Fernandez asserted that the Dodge almost hit his brother (not him); that Petitioner pulled out a gun as Ernesto approached to confront him about almost hitting his brother; and that he turned to run in a "zig-zag" pattern (as opposed to "dancing" and "flipping") after Petitioner began shooting. (Dkt. 11-5 at 98.)

evidence of guilt beyond witness's testimony); *see also United States ex rel. Garrett v. Acevedo*, 608 F. Supp. 2d 1005, 1014 (N.D. Ill. 2009) (state court's decision that petitioner was not prejudiced by counsel's failure to call witnesses was not objectively unreasonable, where the testimony would have lent support to the State's theory of the case and would not have contradicted eyewitness testimony and physical evidence tending to show petitioner's guilt).

Because Petitioner cannot establish the requisite prejudice to establish ineffective assistance of counsel, his claim fails under *Strickland*, and this Court need not reach the performance prong. *See Thill*, 996 F.3d at 476-77 (quoting *Taylor v. Bradley*, 448 F.3d 942, 949 (7th Cir. 2006)) (" 'it is unnecessary and undesirable for [a habeas court] to consider the attorney performance facet of the analysis' when 'an ineffectiveness claim may be disposed of on the basis of lack of prejudice'"). Accordingly, Claim 3 lacks merit and is therefore denied.

For these reasons, Petitioner is not entitled to habeas corpus relief on any of the claims he brought under 28 U.S.C. § 2254. Petitioner's habeas corpus petition is therefore denied.

### III.    Notice of Appellate Rights and Certificate of Appealability

Petitioner is advised that this is a final decision ending his case in this Court. If Petitioner wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(1). Petitioner need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. If Petitioner wishes the Court to reconsider its judgment, however, he may file a motion

under either Rule 59(e) or Rule 60(b) of the Federal Rules of Civil Procedure. Any Rule 59(e) motion must be filed within twenty-eight days of the entry of this judgment. Fed. R. Civ. P. 59(e). The time to file a motion under Rule 59(e) cannot be extended. Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion is resolved. Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. Fed. R. Civ. P. 60(c)(1). As with Rule 59(e), the time to file a Rule 60(b) motion cannot be extended. Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is resolved only if the motion is filed within twenty-eight days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

Separately, a certificate of appealability is not warranted. A certificate of appealability "may not issue 'unless the applicant has made a substantial showing of the denial of a constitutional right'" or error in the Court's procedural determinations. *Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (quoting 28 U.S.C. § 2253(c)). In the Court's view, Petitioner has failed to make this showing.

## IV.    CONCLUSION

Petitioner's habeas corpus petition is denied. The Court declines to issue a certificate of appealability.

SO ORDERED in No. 22-cv-01199.

Date: November 29, 2023

JOHN F. KNESS
United States District Judge